IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBBIN OBOMSAWIM          *

                             *

v.                        *     Civil Action No. WMN-12-3410

                             *

TEMPUR-PEDIC NORTH AMERICA,  *

LLC, <u>et al.</u>          *

                             *

                             *

                             *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

<u>**MEMORANDUM**</u>

Before the Court is a Motion for Summary Judgment and Declaratory Judgment by Defendant Tempur-Pedic North America, LLC (Tempur-Pedic), ECF No. 97, a Motion for Summary Judgment by Third-Party Defendant and Fourth-Party Plaintiff Old PFS, Inc. (Purnell),[1] ECF No. 98, and a Motion for Summary Judgment by Fourth-Party Defendant Cruz Transportation Services (Cruz).  ECF No. 100.  The motions are fully briefed and ripe for review. Upon a review of the papers, facts, and applicable law, the Court determines (1) that no hearing is necessary, Local Rule 105.6, (2) Tempur-Pedic's motion will be granted in part and denied in part, and (3) Purnell and Cruz's motions will be denied.

---

[1] Old PFS, Inc., does business as Purnell Furniture Services.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Robbin Obomsawim brings this negligence action as legal
representative of her deceased mother, Esther Whitman, against
Tempur-Pedic for injuries sustained by Ms. Whitman allegedly as
the result of plastic covering left on the base of her Tempur-
Pedic Ergo bed.  Ms. Obomsawim ordered over the phone from
Tempur-Pedic a king-sized Cloud mattress and Ergo adjustable
base on April 24, 2012, for her mother.  The king-sized bed
consists of two twin long mattresses and two Ergo adjustable
bases that are fixed together at the time of delivery.  Tempur-
Pedic sent the products to its contractor Purnell.  Purnell then
transferred the mattress and bed to Cruz for final delivery to
Ms. Whitman's Dayton, Maryland, home.

The Tempur-Pedic mattress and base are both shipped with a
plastic covering to provide protection during transportation and
delivery.  Delivery personnel are required to remove all plastic
packaging from delivered products prior to installation.  In the
case of Ms. Whitman's delivery, this step was incomplete, in
that the plastic covering was not removed from the base and the
bed was assembled with the plastic in place, even though the bed
is not designed to be used with any packaging or shipping
materials remaining.  Ms. Obomsawim alleges that this remaining
plastic caused the mattress to slide off the base, which caused
Ms. Whitman to fall off of the bed on May 5, 2012.  As a result

2

of her fall, Ms. Whitman suffered a broken leg.  Tempur-Pedic and Cruz allege that the fall was instead due to Ms. Whitman's generally poor health.

At the time of this incident, Tempur-Pedic had a long-standing contractual relationship with Purnell to deliver Tempur-Pedic products in DC, Maryland, and Virginia.  Tempur-Pedic provided training materials to Purnell regarding the safe delivery and installation of its products.  Purnell, in turn, was tasked with training its employees on the proper delivery and set-up of the beds, including removing products from packaging and shipping materials.  With Ms. Whitman's order, the deliverymen with Cruz claim that they received no instruction on the installation of the bed, and believed the plastic was supposed to remain on the base.  Ms. Obomsawim contends that she and her husband asked for the plastic to be removed at the time of installation.  Cruz alleges that the family actually requested that the plastic be left on.

Under the terms of the Home Delivery Shipper-Carrier Transportation Agreement ("Agreement") between Tempur-Pedic and Purnell, Purnell was not permitted to use third-party subcontractors to deliver Tempur-Pedic products without its prior written consent. ECF No. 97-3 ¶ 10.  If Purnell did not obtain prior written consent to use a specific subcontractor, then Purnell was deemed "in material breach of this Agreement

[and] . . . liable for . . . the negligence and willful misconduct of any such Subcontractor to the extent as if [Purnell] had performed the service." Id.  There is no written evidence suggesting that Tempur-Pedic approved Purnell's engaging Cruz to deliver its products.  The Agreement also provided that Purnell would defend, indemnify, and hold Tempur-Pedic harmless from claims, costs, and expenses arising out of "the negligence or willful misconduct of [Purnell] or any Subcontractor." Id. ¶ 15.

On November 20, 2012, Ms. Obomsawim filed this action on behalf of Ms. Whitman against Tempur-Pedic asserting claims of product liability and negligence.  In April, 2013, Tempur-Pedic filed a Third Party Complaint against Purnell, alleging that it was responsible for any negligent acts that produced Ms. Whitman's injury and must indemnify Tempur-Pedic should it be held liable.  ECF No. 31.  In August of the same year, Purnell then filed a Fourth Party Complaint against Cruz, alleging that Cruz was in fact the negligent party responsible for the injury, and requesting indemnification.  ECF No. 57.  Ms. Obomsawim has not cross filed to bring a direct action against either Purnell or Cruz.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the record before the court "shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). <u>See also</u> <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that trial judges have "an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)). A fact is material if it might "affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the Court "views all facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." <u>Housley v. Holquist</u>, 879 F. Supp. 2d 472, 479 (D. Md. 2011) (citing <u>Pulliam Inv. Co. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th Cir. 1987)).

## III. DISCUSSION

### A. Ms. Obomsawim's Negligence Claims

Tempur-Pedic's motion for summary judgment requests judgment on the ground that it did not violate a duty of care owed to Ms. Whitman and it is not liable for the actions of Purnell or Cruz. Purnell then filed a motion for summary judgment that largely adopts Tempur-Pedic's motion. ECF No. 98 at 4 ("[Tempur-Pedic] argues strenuously and ultimately, persuasively, that no evidence exists which proves that they

negligently breached a duty to Plaintiff."). Purnell also underscores the lack of master-servant relationship between it and Tempur-Pedic and it and Cruz. Id. at 5. Finally, Cruz has also filed a Motion for Summary Judgment. ECF No. 100. In it, Cruz, as Purnell, adopts Tempur-Pedic's motion, but also adds arguments of its own: that Cruz itself engaged in no negligent activity and even if it did, it could not be imputed to Tempur-Pedic; that Ms. Obomsawim violated a standard of care to Ms. Whitman by failing to remove the plastic herself;[2] and that Ms. Obomsawim's expert testimony is unreliable. Because the three motions before the Court are similar in substance with respect to Ms. Obomsawim's claim of negligence, the Court shall address Cruz and Purnell's motions collectively with the portion of Tempur-Pedic's motion that addresses this specific issue of negligent installation.

Tempur-Pedic acknowledges that it had a duty of reasonable care to Ms. Whitman, but avers that it met its duty in arranging to have the mattress delivered to her. Tempur-Pedic argues that there is no breach of duty in this case because it used

---

[2] Cruz puts forth a theory that Ms. Obomsawim violated her duty as a host to her mother in her capacity as a "social guest." ECF No. 100-2 at 27. Ms. Obomsawim, however, was staying as a guest in her mother's home while repairs were being conducted on her house. The "social guest" theory of negligence, therefore, has no relevance to the case at hand. See Laser v. Wilson, 473 A.2d 523, 526 (Md. 1984) ("A social guest enters the premises of his host for his own benefit and convenience, and the hospitality the guest receives is bestowed gratuitously.").

reasonable care "by hiring a reputable delivery company . . . to deliver the bed, . . . . provide[ing] careful instructions to Purnell to ensure that Purnell delivered and installed Tempur-Pedic products properly, . . . [and] instruct[ing] Purnell to remove all plastic packaging from Tempur-Pedic products prior to installation." ECF No. 97-1 at 9. Because it engaged Purnell to deliver the bed and mattress and provided instructions related to delivery, Tempur-Pedic concludes that it "took all reasonable steps necessary to ensure that its products were delivered and set up properly." Id. It also states that there is no vicarious liability because Purnell was an independent contractor. Id. (citing Rowley v. Mayor & City Council of Baltimore, 505 A.2d 494, 496-7 (Md. 1986)).

Ms. Obomsawim has filed a separate response to each motion for summary judgment, but in substance they are overwhelmingly the same, as her counsel appears to have copied and pasted the response to Tempur-Pedic into future responses. Compare ECF No. 103-1 at 10 to 24 with ECF No. 105-2 at 8 to 20 and ECF No. 104-2 at 13 to 25. In this first response, Ms. Obomsawim presents multiple theories of liability by which Tempur-Pedic may be held responsible for Ms. Whitman's injuries. First, it argues that Tempur-Pedic owes Ms. Whitman a direct duty of care "to properly deliver and install Plaintiff's specialty mattress," ECF No. 103-1 at 18, which continued throughout Tempur-Pedic's entire

relationship with Ms. Whitman and was nondelegable. Second, in the absence of a direct duty of care, Ms. Obomsawim argues that Purnell and Cruz were agents of Tempur-Pedic, and any liability that arises from their actions may be imputed to Tempur-Pedic. Finally, Ms. Obomsawim argues that, in the absence of direct liability or direct agency, Tempur-Pedic may be held liable on the ground that Purnell and Cruz were apparent agents of Tempur-Pedic.

The Court finds that Tempur-Pedic has not violated its duty of care to Ms. Whitman because Tempur-Pedic used reasonable care in selecting and ensuring delivery and installation of the mattress and Ergo system. In order to prove negligence, a plaintiff must show that (1) defendant owed a duty to plaintiff; (2) defendant breached its duty; (3) plaintiff was injured; and (4) the injury was proximately caused by defendant's breach. Read Drug & Chem. Co. v. Colwill Constr. Co., 132 A.2d 548 (Md. 1968). Here, Ms. Obomsawim contends that Tempur-Pedic had a duty to "ensure that the mattress was delivered and installed correctly in accordance with the appropriate standard of care." ECF No. 103-1 at 19. To accomplish this task – to ensure prompt delivery and correct installation – Tempur-Pedic entered into a contractual relationship with Purnell. Purnell was engaged in the business of delivering furniture to homes. The Statement of Work integrated into the contract clearly instructed Purnell on

how to deliver and install Tempur-Pedic products and explicitly
required Purnell to train employees with this information.
Tempur-Pedic limited Purnell's ability to delegate its
obligations by requiring Purnell to obtain Tempur-Pedic's
authorization before hiring subcontractors.

Ms. Obomsawim argues that, in the absence of direct
liability, Tempur-Pedic may be held liable for the actions of
Purnell and Cruz on the ground that they were acting as agents
of Tempur-Pedic.  She urges the court to analyze the
relationship between Tempur-Pedic, Cruz, and Purnell through the
lense of "control."  Id. at 12.  This argument omits, however,
the required manifestation of agreement between the parties in
establishing a principal-agency relationship.  Jackson v. 2109
Brandywine, LLC, 952 A.2d 304, 321 (Md. Ct. Spec. App. 2008)
("An agency relationship 'arises from the manifestation of the
principal to the agent that the agent will act on the
principal's' behalf.")(quoting Anderson v. General Cas. Ins.
Co., 935 A2d 746 (Md. 2007)).

Here, the parties clearly lack agreement to be bound in a
principal-agent relationship.  The Agreement between Tempur-
Pedic and Purnell explicitly states that Purnell is to act as an
independent contractor and "not as an agent" of Tempur-Pedic.
ECF No. 97-3 ¶ 9.  The conduct between the parties and the
nature of Purnell's business supports the contractual language

that Purnell was an independent contractor.  While Tempur-Pedic

provided instruction for delivery and set-up of their products,

Tempur-Pedic did not provide active supervision over Purnell and

Purnell was in charge of training its employees with the

instructions provided by Tempur-Pedic.  Purnell was in the

business of providing home delivery service, and does so for

furniture companies besides Tempur-Pedic.  Purnell maintained

its own fleet, equipment, and staff to support its independent

business in delivering furniture.  See Washington News Co. v.

Satti, 182 A 286, 287 (Md. 1936)("An independent contractor is a

person who contracts with another to do something for him but

who is not controlled by the other nor subject to the other's

right of control with respect to his physical conduct in the

performance of the undertaking.").  In addition, Cruz was an

unknown party to Tempur-Pedic, thus making constructive or

actual agreement to enter into an agency relationship

impossible.  As there was no agreement to act in a principal-

agent relationship there can be no actual agency relationship

from which liability may be imputed to Tempur-Pedic.

    Ms. Obomsawim then argues that, in the absence of an actual

agency relationship, there was an apparent agency relationship

between the parties.  "In the absence of actual authority, a

principal can be bound by the acts of a purported agent when

that person has apparent authority to act on behalf of the

principal." <u>Dickerson v. Longoria</u>, 995 A.2d 721, 735 (Md. 2010).[3]  "Under Maryland law, two elements are necessary in order to establish an apparent agency.  First, the principal must by its acts and conduct hold out the alleged agent as being authorized to act in the principal's behalf.  Second, the third party must rely in good faith upon this representation." <u>Hofherr v. Dart Indus., Inc.</u>, 853 F.2d 259, 262 (4th Cir. 1988) (citing <u>B.P. Oil Co. v. Mabe</u>, 370 A.2d 544 (Md. 1977)).  The Court finds that there is sufficient evidence from which a jury could conclude that an apparent agency relationship existed sufficient to hold Tempur-Pedic accountable for the actions of Cruz.  When Ms. Obomsawim purchased the mattress, Tempur-Pedic offered not only the bed and mattress but also free shipping, setup, and removal of old bedding.  Ms. Obomsawim testified that the customer service representative on the phone told her that "it wasn't going through another company, that [Tempur-Pedic] was going to be doing it."  ECF No. 103-5 at 19.  She also testified that, at the time of her order, her "understanding was

---

[3] Tempur-Pedic interprets Maryland jurisprudence to require that the purported agent have a "particular skill necessary to perform the task" in order for apparent agency to apply.  ECF No. 108 at 5.  With this interpretation, Tempur-Pedic argues, apparent agency analysis is irrelevant, since anyone can remove a plastic sheet from a bed frame.  This limited interpretation, however, ignores that the apparent agency framework is applied even when no particularized skill is implicated.  <u>See, e.g.</u>, <u>Mabe</u>, 370 A.2d at 556 (analyzing whether a service station operator is the agent of an oil corporation).

that Tempur-Pedic was taking care of it." Id. From the details of the phone conversation and offer made to Ms. Obomsawim, a fact-finder could conclude that when the mattress was delivered, Ms. Obomsawim, based on her original conversation with Tempur-Pedic, reasonably believed that the Cruz deliverymen were agents of Tempur-Pedic and relied on such belief in trusting the deliverymen to the installation. Thus, Tempur-Pedic may be held liable if any action taken by Cruz within the course of installation was negligent.

As to whether Cruz was negligent, the parties are in dispute over key material facts. The Cruz delivery crew states that Ms. Whitman's family told them to leave the plastic packaging on. Ms. Obomsawim, on the other hand, maintains that both she and her husband, Jules Obomsawim, asked Cruz's employees to remove the plastic. Ms. Obomsawim also testified that Cruz refused to remove the plastic. The parties also dispute whether the accident was caused by the slipping mattress or Ms. Whitman's pre-existing health conditions.

Cruz, in particular, takes issue with Ms. Obomsawim's experts as to the duty and causation elements of her claim. Cruz argues that Ms. Obomsawim's two witnesses are unqualified to testify. ECF No. 100-2 at 30-31. An expert witness must "be qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In order for an

expert witness to testify, "(1) the testimony [must be] based upon sufficient facts or data, (2) the testimony [must be] the product of reliable principles and methods; and (3) the witness [must apply] the principles and methods reliably to the facts of the case." Casey v. Geek Squad, 823 F. Supp. 2d 334, 340 (D. Md. 2011). In challenging Ms. Obomsawim's witness admissibility, Cruz attacks her standard of care witness as insufficiently qualified and her causation witness as relying on erroneous scientific standards.

First, Cruz objects to Ms. Obomsawim's expert witness on the standard of care, Raphael Kail, on the grounds that he does not install adjustable beds, has no formal education in furniture delivery, and bases his opinion on the standard of care only by "his unrelated and underwhelming experience for his opinion." ECF No. 100-2 at 33. Counter to Cruz's opinion, Mr. Kail's experience is neither unrelated nor underwhelming. Although he has not installed an adjustable bed, removing plastic packaging before furniture installation is not such an extraordinary step that Mr. Kail's experience in removing packaging from other furniture would not relate to the case at hand. And even though Mr. Kail does not have formal training in furniture delivery, his 25 years of experience in working for, owning, and operating furniture delivery companies certainly makes up for any possible lack of schooling. See Kumho Tire

Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) (stating that the language of Rule 702 "makes no relevant distinction between 'scientific knowledge' or . . . 'other specialized knowledge'"); Young v. Swiney, ___ F. Supp. 2d ___, 2014 WL 2458405, at *12 (D. Md. May 30, 2014) ("[E]xperience alone, or in conjunction with 'other knowledge, skill, training or education,' can provide sufficient foundation for expert testimony.") (citation omitted).  The fact that he has never delivered a Tempur-Pedic or other adjustable bed may be used on cross-examination to impeach him, but he has sufficient expertise to testify as to the standard of care used in removing protective coverings.  See Glass v. Anne Arundel Cnty., ___ F. Supp. 2d ___, 2014 WL 3941564, at *6 (D. Md. Aug. 7, 2014) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  As such, Mr. Kail is sufficiently qualified to testify as to the standard of care used in delivering furniture.

     Next, Cruz objects to Ms. Obomsawim's expert witness on causation, Dr. Sher Singh, on the grounds that he has insufficiently tested the polyethylene from which the plastic packaging was made and relied "merely [on] only his years of experience of testing."  ECF No. 100-2 at 34.  The objection, in essence, relates to the second factor of the test for expert

14

testimony, that Dr. Singh's testimony would not be "the product of reliable principles and methods." Casey, 823 F. Supp. 2d at 340.  Dr. Singh testified, based on his many years of experience, that polyethylene is known to produce a low co-efficient of friction.  These almost 30 years of experience include a professorship at Michigan State University School of Packaging and developing a plastic mattress package system for Simmons Bedding Company.  This long history of experience and exposure to the science of plastics as they relate to packaging, specifically of mattresses, strongly suggests that Dr. Singh's testimony "rests on a reliable foundation and is relevant." Kumho Tire, 526 U.S. at 141.  The fact that he chose to engage in some scientific tests but not others relates to the weight and sufficiency best considered by a jury, but his expert testimony otherwise bears directly on the matter at hand.  As such, Dr. Singh's testimony is admissible and contributes to the resolution of the dispute as to whether Ms. Obomsawim's accident was caused by the plastic covering.

    As there are material facts that go directly to the heart of breach and causation, the Court will deny Tempur-Pedic's motion for summary judgment as it relates to Ms. Obomsawim's negligence claims.  For the same reasons, the Court will also deny Purnell and Cruz's motions for summary judgment.

15

**B. Ms. Obomsawim's Product Liability Claims**

Tempur-Pedic moves for the Court to grant summary judgment in its favor on Ms. Obomsawim's product liability claims.  It does so in light of Ms. Obomsawim's stipulation that she will not introduce evidence relating to strict products liability. ECF No. 87.  Ms. Obomsawim's opposition addresses "only . . . the negligent installation and/or agency issues" in Tempur-Pedic's Memo and she acknowledges that she "is no longer making any product liability claims."  ECF No. 103-1 at 2 and 7.  The Court, therefore, will grant Tempur-Pedic's motion for summary judgment on Ms. Obomsawim's strict products liability claims.

**C. Tempur-Pedic's Motion for Declaratory Judgment Against
    Purnell**

Finally, Tempur-Pedic seeks a declaratory judgment against Purnell establishing that "Purnell must defend and fully indemnify [Tempur-Pedic] against Plaintiff's claims."  ECF No. 97 at 2.  The source of the duty to indemnify is the Agreement between Tempur-Pedic and Purnell to deliver and install Tempur-Pedic products.  It states, in relevant part:

> "Carrier hereby agrees to defend, indemnify and hold
> Shipper . . . harmless from and against any and all claims,
> . . . lawsuits, actions proceedings, . . . penalties,
> costs, and expenses (including, but not limited to,
> reasonable attorneys' fees) arising in any manner
> whatsoever out of: (i) Carrier's breach of any term(s) of
> this Agreement (including any breach resulting from the
> acts or omissions of any Subcontractor); (ii) the
> negligence . . . of Carrier or Subcontractor and/or any of

their employee(s), agent(s), subcontractor(s), or
representative(s)."

ECF No. 97-3 ¶ 15.  Tempur-Pedic argues that declaratory
judgment is appropriate because: Purnell admitted in its answer
to the Third-Party Complaint that it agreed to indemnify and
defend it against all claims resulting from its delivery of
Tempur-Pedic products, ECF No. 52 ¶ 11(k); Purnell breached the
Agreement when it hired Cruz to deliver Tempur-Pedic products
without Tempur-Pedic's written permission; Purnell was
potentially directly negligent when it failed to train Cruz in
proper installation; and, Cruz was potentially negligent when it
left the plastic on the bed.  ECF No. 97 at 10.  Purnell
counters that, (1) although there is "no direct proof between
Tempur-Pedic and Purnell regarding the use of subcontractors,"
ECF No. 102 at 7, the fact that Cruz's contract predates the one
with Tempur-Pedic makes it "arguable that Cruz's existence was
known to Tempur-Pedic," id., and (2) since negligence has not
been proven, a grant of declaratory judgment is premature.  Id.
at 8.

Declaratory relief is available when the relief sought "(i)
'will serve a useful purpose in clarifying and settling the
legal relations in issue' and (ii) 'will terminate and afford
relief from uncertainty, insecurity, and controversy giving rise
to the proceeding.'"  First Nationwide Mortg. Corp. v. FISI

Madison, LLC, 219 F. Supp. 2d 669, 672 (D. Md. 2002).  Here,
Purnell is under a clear duty to indemnify as it violated the
Agreement by using Cruz to deliver Tempur-Pedic products without
permission and Cruz's actions – whether negligent or not –
directly gave rise to this cause of action.  Under the
Agreement, in order for Tempur-Pedic to require Purnell to
indemnify it, there must be an action "arising in any manner"
out of Purnell's "breach of any term of [the] Agreement."  As
the case is before this Court, the first requirement is met.

Purnell's use of Cruz to deliver Tempur-Pedic products is a
clear breach of the Agreement, as there is no record of Tempur-
Pedic granting permission and its corporate representatives
actively deny knowledge of Cruz.  The mere suggestion that
Tempur-Pedic may have been somehow aware of the pre-existing
relationship between Cruz and Purnell despite "no direct proof"
that Tempur-Pedic and Purnell ever discussed the matter is
insufficient to demonstrate that Purnell is not in breach of its
duty.

Finally, Cruz's allegedly negligent delivery and
installation was a direct consequence of Purnell's decision to
engage it in its Tempur-Pedic business.  Therefore, the
negligence action of this case directly arises from Purnell's
breach of the Agreement.  Since, in this instance, a declaratory
judgment will clarify and settle the relational ambiguity

between Tempur-Pedic and Purnell, the Court sees no reason to delay its decision to grant Tempur-Pedic's Motion for Declaratory Judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant Tempur-Pedic's Motion for Summary Judgment will be GRANTED IN PART AND DENIED IN PART, Tempur-Pedic's Motion for Declaratory Judgment will be GRANTED; Third-Party Defendant Old PFS, Inc.'s Motion for Summary Judgment will be DENIED, and Fourth-Party Defendant Cruz Transportation Service's Motion for Summary Judgment will be DENIED.  A separate order will issue.



_____/s/_____
William M. Nickerson
Senior United States District Judge

DATE: January 5, 2015